The second case this morning on our calendar is Gacho v. Jones. All right, good morning. Mr. Kelleher, can you hear me? Yes, I can, Your Honor. All right. Ms. Dersh, can you hear me? Yes, thank you. Mr. Kelleher, you may proceed. Thank you, Your Honor. Good morning. Robert Gacho was tried and sentenced to death before a bribed judge. Whatever bias standard the court employs, this fails due process. A fair trial in a fair tribunal is a fundamental right. Judge Maloney violated his oath by taking $10,000 from Gacho's co-defendant 18 months before trial. The moment that exchange occurred, the battle lines were irreversibly drawn. Gacho lost before the trial began. As for the proper bias standard, the First District disregarded clearly established precedent. A fair trial means not only the absence of bias, but a guarantee against even the risk of an unfair tribunal. The court in Cafferton said that due process is implemented by objective standards that do not require proof of actual bias. In Murchison, the court said the judicial system seeks to prevent even the probability of unfairness. And finally, the Toomey Court decided the fact that a $12 benefit might ultimately come to a judge was a disqualifying interest as it was a possible temptation. So the risk of bias is the test. Defining this precedent is the first use of the actual bias standard. This standard was used in Bracey, a case that didn't involve a bribe. Instead, Bracey addressed scenarios of compensatory bias and the speculation of a bribe. Gacho's case doesn't fit the Bracey framework, as the facts here are far more compelling. Namely, the bribe here was real, not speculative. This is a critical distinction that the state and first district avoid. Additionally, the contrast between what the first district did and Supreme Court says could not be clearer. The bribe here gave Maloney a direct personal and pecuniary interest in this case. Thus, the contrast between these two standards cannot be reconciled. Justice DeLorte highlighted this disconnect in dissent. Yet the state ignores him. The state also ignores Caperton, Murchison, and Toomey, turning this into a one-sided argument. The shallowness of the state's analysis is stunning. Its single conclusory paragraph gives the court no reason to reject the risk of bias standard. But even if the court does, Gacho still prevails under the actual bias standard. And that is for a simple reason. One with an interest in the outcome cannot sit in judgment. Not a novel concept. In the Magna Carta, the king promised, to no one will we sell justice. Blackstone states that persons shall have justice freely without sale. Yet this case involves a corrupt to the core judge who sold the verdict. And a state that has endeavored for three decades to leave this fraud intact. Further, the first district stated that Maloney convicted Titone to deflect suspicion from himself. This court in the Bracien Banque said the same thing. This is a clear and quintessential interest in the outcome that necessitates a new trial. Mr. Keller, if I may. My reading of the Illinois Court of Appeals decision that we're reviewing here is that it was entirely based on the actual bias standard. And disregarded paperton by saying it's factually distinguishable. Is that a fair reading of the case? Your Honor, it may be factually distinguishable in the essence that paperton. I'm suggesting that paperton is factually distinguishable here for the moment. I think it is factually distinguishable, but that doesn't apply. Paperton was a very significant sea change in due process law when it comes to evaluating claims of judicial bias. But before we get to that, I'm just trying to identify the scope of the state, the state court of appeals decision here. And as I read it, it entirely rests on the actual bias standard, not the objective standard that paperton ushered in as a new due process standard. Yes, Your Honor, I would agree with that completely. And paperton obviously built on Murchison and Toomey, two older cases. But yes, to answer Your Honor's question in short, paperton controls the appellate court here, distinguished it on the facts, not on the law. And frankly, with due respect to the first district, it's a very weak distinction. I mean, obviously, paperton involves judicial contributions, but the controlling element of paperton is the law and the test. And that test is the risk of bias. And that test, frankly, was used by the Illinois Supreme Court in the Hawkins case. And again, we're not arguing that the first district's deviation from Illinois Supreme Court precedent is grounds for reversal. But it's an example, or I should say another example of why and how the first district disregarded clearly established precedent. And in Hawkins, the court relied on Murchison and Toomey and the risk of bias test. And that decision was from 1998, which obviously preceded paperton. But paperton is essentially the capstone of the Murchison Toomey line, which, again, emphasizes the risk of bias standard. And that risk is or I should say that test is for a simple reason. It's literally impossible to get into a judge's mind. And that was what the court said in Vasquez v. Hillary. Mr. Conrad. Yes, your honor. Related to the dialogue you're having with Judge Sykes, we know from Rippo, do we not, that Bracey in the court's mind, Bracey remains good law. Bracey is not overruled in Rippo. It's kind of set aside. So my question for you is, what ground do you think Bracey covers in the law today? And where does Caperton pick up? Certainly, your honor. Yes, the two cases, Bracey and Caperton can coexist. Bracey concerns compensatory bias. And really, I would just say speculation, the speculation of a bribe or the speculation of a bias. And whereas, Caperton really involves more nefarious conduct in the underlying case. In other words, in Caperton, the issue was contributions related to this justice, this West Virginia justice, and whether these contributions were related to this case. Whereas, Bracey involves bias more in the abstract. So the dichotomy would be the standard is more lenient in the risk of bias standard because the facts, there's nefarious conduct, either alleged or demonstrated in those underlying facts. So Caperton, again, is involving real bias. I think you're misreading Caperton in a way that doesn't necessarily help your cause. The majority in Caperton was very clear that it was not accusing the West Virginia Supreme Court justice of actual bias or accusing Don Blankenship of nefarious conduct in making the campaign contributions that he did to the justice whose vote became disbanded in the case. I think the court was very careful to separate out any claim of actual corruption that this judge was bought and paid for, for purposes of reversing the $50 million verdict against Massey Cole, for good reason. The entire decision rests on the objective standard and elevates the objective standard for recusal that exists in every ethics code in the country and existed as a matter of common law in determining recusal requirements and elevated it and put some construct and content into the standard for purposes of assessing the constitutional right of due process. And that was the innovation of Caperton. You're right, it built on Toomey, it built on other cases. Yes, exactly. But it didn't turn on anything nefarious. It was completely objective and whether what had happened in that case created such a risk of bias as an objective matter that it was constitutionally intolerable not to recuse in that case. And so that's where we should be situating this case, if you're relying on Caperton as your primary authority here. And is it constitutionally intolerable, is the risk of bias so great in this case as an objective matter, because the judge was bribed in the co-defendants case that that writ of habeas corpus is required. There's a due process violation. Certainly are understood. And, you know, again, I'm more the issue of Bracey, I think, obviously, that's what the state embraced. It's what the first district embraced. I'm in the mode of or the mindset of this, this abstract bias and just bias in general due to due to bribes. And Bracey stands for the proposition that actual bias is very straightforward actual bias is sufficient. There's proof of actual bias that's sufficient for due process violation. It's not necessary as we know from Caperton that's the whole innovation of Caperton but it's sufficient, but that's not what this case turns on. Although that's what, or at least according to your argument, that's what the Illinois Supreme Court said it dismissed Caperton is simply factually inapplicable rather than grappling with the legal standards that Caperton handed down as as a development of the to me line of case law. Certainly your honor. And again, the first district basically just ignored all of this ignored ignored what your honor saying ignored the development of this test. And again, the Murchison to me, Caperton line. And again, this was not, this is not a novel argument or a novel theory. The Illinois Supreme Court again in 1998, understandably pre-Caperton, it adopted this, this risk of bias test and it followed Murchison and it followed to me. And Hawkins is really essentially on all fours with this case. The only difference is the bribe there was was returned in that case here. We're not exactly sure what happened to the $10,000. But I would also like to point out the context of this case. In 1984, Operation Greylord, media scrutiny, and a retention vote were all looming. And Judge Maloney, he knew the heat was on. So if the tone was going to walk, there is no way Gasho or Sorrentino could. And this context is critical for another reason. By the fall of 1984 specifically, judges and bag men were falling like dominoes with Operation Greylord securing a conviction or guilty plea every month. And this is relevant because as the court said in Murchison, we must consider the circumstances and relationships when ruling on issues of due process and impartiality. Yet the state in first district, they viewed Teton's bribe in a vacuum. But even if we set Salvatore Teton's affidavits aside, which were unrebutted, and the bribes terms, it's undisputed that a bribe was paid here. And that's obviously based on Judge Strayhorn, Judge Zagel, and Enbox Seventh Circuit in the first district. So if we- On that question, Mr. Kelleher, we obviously have this debate. And there's the huge challenge of finding admissible evidence about crimes committed more than 30 years ago where witnesses have died. It is clear, isn't it, that at least Teton got a new trial on this theory? Yes, Your Honor. So the Illinois courts have treated that as- that at least his conviction was corrupted by the payment of a bribe? Yes. Okay. And as I view it, the question in essence is- with Bracey, we've got kind of the general question, was everything that Judge Maloney did corrupt? Or have you got some specific evidence in your case? In this case, the question is whether there's a constitutional barrier that somehow prevented the taint of Teton's trial from flowing as far as the next table in the same courtroom, in the same trial, the same evidence. Yes, Your Honor. And that was the point of Justice DeWard's dissent and our opening brief. How do you separate- how do you isolate this bias to one individual and not the other? Again, these were- these two men simply can't be compartmentalized. It was simultaneous trial, same evidence, arguments, issues, victims, and judge. And the state, with due respect, the state makes no effort to explain how these two men can be separated. And I see my time is up. All right. Thank you very much. Ms. Dorsch. Good morning. May it please the Court. I'm Assistant Attorney General Catherine Dorsch on behalf of Respondent Wharton. Because Petitioner's claim is one of compensatory bias, he did not pay a bribe. Instead, it's alleged that someone else, his co-defendant, paid a bribe, which was returned to him, and that somehow Judge Maloney acted with compensatory bias against Petitioner. This is a claim of compensatory bias. It does fall squarely under Bracey and not Caperton. Caperton never silently overruled Bracey. In fact, it cited Bracey. Instead, it's just distinguishable here because Caperton and the other recusal cases, such as Toomey and Murchison, again, the judge had an interest in that defendant's case. In Caperton and Toomey, it was a financial interest. And so, as Judge Sykes was saying earlier, the question is whether that risk of bias in that situation is constitutionally intolerable. But the Court in Bracey… But that's not the standard, Ms. Dorsch. That's not the standard that the Illinois Court of Appeals applied. The Illinois Court of Appeals rested its entire decision on the actual bias standard and the failure of proof on actual… That's correct. And it dismissed even the existence of an objective standard of bias for due process purposes under Caperton by factually distinguishing the case. That's an unreasonable application of Supreme Court law because Caperton very clearly discusses an objective test for unconstitutional bias on the part of a judge. And the Illinois Court of Appeals can't just refuse to apply it. And that's what it did. So, I think we're addressing this question in the first instance de novo. And so, tell me why, under these circumstances, this is constitutionally tolerable. Not by reference to what the Illinois appellate court said, but on the merits de novo. On the merits de novo. Petitioner had an opportunity to… Objective standard that Caperton discusses. Correct. Petitioner had an opportunity to present evidence of a bribe. He admitted he didn't pay any bribe. So, there's no question there that he had ever paid any bribe. The actual bias is out of the picture. The state judge disagreed or found petitioner's testimony entirely incredible and found that Medekovich had never even solicited a bribe. So, and he never even presented any competent evidence whatsoever that Titone had paid a bribe. I understand that, but the Illinois state courts, at least as I understand the situation, have, in essence, adopted the view that Titone paid a bribe and his original conviction was corrupt and had to be set aside. Right? In this particular, in this appeal, yes. What happened in this appeal is that the state appellate court assumed the truth of the statement. I know what they said in their opinion. I'm asking, though, about the objective fact that Titone's conviction in the same trial where he sat next to Mr. Gaccio was set aside because of the judge's corruption. Is that correct? It was set aside because Judge Strayhorn could not be certain whether there was a bribe. If you look at the exhibits attached to the supplemental petition filed by petitioner's counsel in the supplemental petition, there's some portions, some excerpts from the transcript where Judge Strayhorn initially denied the petition, and then he came back on reconsideration, and he was persuaded by Judge Rovner's dissent in the Bracey panel decision, and he just felt that he couldn't be sure. So that, yes, he was going to order a new trial. Okay, so the Illinois courts then are saying there was enough proof of corruption in Titone's conviction to set it aside. Yes, Judge Strayhorn believed that he could not be certain. If we're going with a risk of bias, I think that it is fair to say that Judge Strayhorn felt that there was sufficient risk of bias. He could not be certain that Titone got a fair trial. Yes. But the same does not hold true for petitioner here because it was not the same trial. They were held together, but they're not the same trial. Is that, are we really, do you think this case depends on whether we're talking about the same case or the same trial or the same defendant? Well, certainly this court made that distinction in Cartolino, Your Honor. There were two, it was a very similar case. There were two co-defendants tried in front of a judge, and one of the co-defendants had bribed Judge Close, and the other co-defendant had not. And I believe that was a case out. But you yourself argue that Cartolino is neither here nor there. It's not a Supreme Court decision. I mean, you say that a few different times in your red brief. So you urge us to ignore Cartolino. I disagree with that, Your Honor. I don't urge to ignore it. I'm saying it can't provide the clearly established Supreme Court precedent under EDPA that would establish sort of a ruling, a rule whereby there would be a burden shifting that you can't rely on Cartolino for that purpose. But this court has certainly held under similar circumstances where one co-defendant was paid a bribe and the other did not. And in that case, the bribe was not returned. They said without more, that's not enough to show, to state a claim. Where did we say that? In Cartolino. I read, maybe I'm reading that a little bit differently. We do not think the bribing of a simultaneously tried co-defendant in the circumstances presented by this case is conclusive proof of judicial bias. But it is such strong evidence, much stronger than the evidence in Bracey, that we think it shifts the burden of persuasion to the state to show that there was no actual bias. You're saying that that blesses what we were blessing there, what happened here? I read that case, Your Honor, to say that the reason that the burden would shift is because in Cartolino there was something more. There was proof that the co-defendants bribery agreement included agreement to convict the co-defendant. And that's what we're missing here. So that's how I read that, Your Honor. It sounds like, Ms. Dorsch, you're arguing the standard is so demanding for proving bias that in essence it requires a confession by the corrupt judge. That not only did he take the bribe, but it actually affected his management of the trial. The way I read Caperton, Murchison, Toohey, and so on is the Supreme Court has never gone so far as to require such an admission. But essentially says at some point, and this would be well beyond it, at some point, what we know about human behavior and motivation just makes the risk of bias constitutionally intolerable. I'm not arguing, Your Honor. I'm sorry if I misspoke or misled the court. I'm not arguing that there has to be any smoking gun. Even Bracey itself and this court's Bracey-Anne Bach decision, you're not going to find that. We can't depose Judge Maloney. And even if we could, we can't get in his head. It's unlikely that he would agree. But we can look for things. We can look for circumstances. If Petitioner had proof here that the agreement with Titone included an agreement to convict the co-defendants so that he would appear favorably in front of the Graylord investigators, that would be some evidence. Presumably, Titone doesn't care. If Titone's paying a bribe to the judge to be acquitted, he presumably couldn't care less what happens to his buddy Gaccio, right? If there's bias, it's not because it's explicitly in an agreement, a criminal agreement. It's because of what the judge would naturally do when the heat is on. And speaking of which, I've got to at least voice a concern that once Judge Maloney knew he was a suspect in Graylord, I don't understand why we would not treat anything he did to convict anybody as subject to an enormous risk of actual bias. Because suddenly his principal concern in life is trying to deflect suspicion from himself in any case rather than to do justice in the individual case before him. Now, that's a broader concern than we would need to reach in this case. But this is very troubling. And the Illinois Appellate Court's opinion seems to be based on a very, very optimistic and unrealistic view of human nature. And back to the point of the Caperton case and how the objective standard applies, Ms. Dorsch, nothing in Caperton required any evidence of an actual agreement between Don Blankenship and Justice Benjamin to throw the case. That's correct, Your Honor. Objective test based on what is reasonable to assume the pressures of campaign contributions of the size that were involved in that case would have, not did have, but would have as an objective matter to a reasonable observer and judge. That's how the objective test for recusal operates. And the court essentially constitutionalized it in Caperton. That's what made the case so significant, especially for states that elect their judges. It's not locked on the bench and bar, I assure you. So the case has to be taken seriously. And the Illinois Supreme Court, the Illinois Appellate Court didn't take it seriously. So I'm asking you to take it seriously and try to apply it in this case, since the Court of Appeals of Illinois did not. Well, the way we read it also, Your Honor, is that the Caperton majority said it wasn't doing anything differently, that it was simply conducting the same due process analysis that it conducted in Murchison and Toomey and all the other cases. It cited Bracey, it never purported to overrule it. So we read it to draw this distinction between cases in which there was a financial interest and they left Bracey untouched. So we believe that we could fairly distinguish Bracey on that basis. There was no direct financial interest in the Bracey sort of situation where they conducted the same analysis and came out on the other side of the line. Ms. Dorsch, it's Judge Scudder. I got a question for you. One of the things that I think makes this exceedingly difficult for the state is the express assumption that the Illinois Appellate Court made. And the express assumption, as you know, is that, as it says, for purposes of our analysis, we're going to assume that Titone did bribe Maloney and that Maloney convicted Titone to deflect suspicion from himself. And so if we take the case as it comes to us, having been analyzed with that assumption in place, I'm not so sure that the point that I don't know how you get around the point that Judge Hamilton was making. These men are sitting shoulder to shoulder in a courtroom on trial for their lives and that if Operation Greylord getting off the ground was enough to create an assumption, as the Illinois Court of Appeals put it, to convict Titone to deflect suspicion from himself, Maloney, I have no idea how you argue that doesn't have a spillover on to Mr. Gaccio. I don't know how you make that argument. And they made the assumption, for better or for worse. Maybe they made it because of the statement in our en banc and the statement that Judge Zagel made in that 03 opinion. But they made the assumption. And don't we have to take the case as it comes to us with that assumption in place? Yes, I do, Judge. I do think we have to take the case with that assumption in place. I agree. And the way we've been treating this case and the way the appellate court treated this case is to treat the defendants separately and their cases separately. The fact that they were in the same courtroom at the same time shouldn't matter for these purposes. They were tried together, but they were not the same case. There's just an air of unreality to it as a practical matter. If you think about what's going down in that courtroom, same witnesses are testifying against both defendants, literally. The same judge is providing over every single evidentiary ruling. You get the point. Yes, I do. Thank you. So you're not arguing that there wasn't a risk of compensatory bias? No, Your Honor, I don't think I can. I'm sorry. I don't think I can fairly argue that there's no risk of compensatory bias. Our argument is that Bracey conducted the same analysis as Caperton. It came out on the other side because there was no direct financial interest in this case. If this court were to find that there's a risk of biased standard governance, I don't think I could argue that there's no risk of bias here. All right. Thank you very much, Mr. Kelleher. I think your time had expired. If you have anything further, you may have an extra minute. I appreciate that, Judge Sykes. As Your Honor's note, Operation Greylord, the threat of that, made Judge Maloney's interest not merely direct and personal, but literally existential. And as the court in Murchison said, justice must satisfy the appearance of justice. The Gosho-Tetone trial fails that aim in every conceivable way. I recognize habeas relief is granted sparingly, but if there was ever a case where such relief is warranted, this is it. What happened at Gosho wasn't fair, wasn't just, and doesn't pass constitutional muster. A bribed judge is a structural defect of the highest magnitude. The state court's indifference to and trivialization of a proceeding so lacking in due process compels federal court intervention. Habeas relief is rare, but so is the sale of verdicts. And if there are no further questions, thank you for your time. Thank you very much. Our thanks to both counsel. The case is taken under advisement.